## WILLIAM MORRIS *vs.* DELOS PLATT AND ANOTHER.

A man who is assaulted under such circumstances as to authorize a reasonable belief that the assault is made with a design to take his life, or inflict extreme bodily injury, will be justified, in both the civil and criminal law, if he kill or attempt to kill his assailant.

The question whether the belief was reasonable or not must be passed upon by a jury, but a person does not act in such a case at the peril of making that guilt, if appearances prove false, which would be innocence if they proved true.

It is well-settled that a man is not liable in an action of trespass on the case, for an unintentional consequential injury resulting from a lawful act, where neither negligence nor folly can be imputed to him ; and there is no reason for a different rule where the injury is immediate and direct, and the action trespass.

Where a person in lawful self-defence fires a pistol at an assailant, and missing him wounds an innocent bystander, he is not liable for the injury if guilty of no negligence.

While this is the result of the application of well-settled legal principles, it is questionable whether, in view of the too general practice of carrying fire arms, and the danger to innocent persons from their use, there should not be some legislation changing the rule of law in such a case, or otherwise protecting the public.

It is not the proper course for a judge to lay down the general principles applicable to a case and leave the jury to apply them, but it is his duty to inform the jury what the law is as applicable to the facts of the case.

The facts of a case are to be found by the jury, unless admitted, and the judge can only regard them as claimed, for the purpose of applying the law to them contingently, if found; and he can not properly refuse to charge upon the facts claimed on the ground that in his opinion they are not proved.

TRESPASS for an assault, tried to the jury in the superior court, on the general issue, with notice that the acts were done in lawful self defence, before *Park, J.*

On the trial it was admitted that the plaintiff received the injury complained of by means of two pistol shots fired by Delos Platt, one of the defendants. The defendants introduced evidence to prove, and claimed that they had proved, that at the time of the occurrence one of the defendants, Sylvester Platt, was assaulted by one Holihan, a brother-in-law of the plaintiff, and that a personal struggle ensued between them ; that immediately after, the said Sylvester was surrounded by a large number of the friends of Holihan, among whom was the plaintiff, several of whom had clubs in their

hands, and that they joined in the attack upon him and were beating him upon the head with clubs and fists to the imminent peril of his life; that the other defendant, Delos Platt, was a mere bystander, and did not interfere until he saw his brother in great peril, when he attempted to get into the crowd to get him away; that he was immediately struck a severe blow upon the top of his head with a club, which nearly felled him to the ground and partially stunned him; that he immediately turned and ran away to avoid more blows, and was pursued by a number of persons, among whom was the plaintiff, from the crowd that had surrounded Sylvester, several of them being armed with clubs; that he ran about six rods, when he was overtaken by his pursuers and was immediately felled to the ground; that his pursuers surrounded him and beat him upon the head with their fists and clubs, so that his head was severely bruised and he was in great bodily peril and in danger of losing his life; that while he was upon the ground and being beaten in the manner above stated, he fired the pistol shots at those who were beating him; that the plaintiff was one of the assailants, and received all the injuries complained of while in this attack upon him, from the pistol shots fired by him; and that all that was done by him was done in self-defense, to protect his life, and his person from extreme bodily injury. The plaintiff claimed and offered evidence to prove, that he had nothing to do with the contest between Sylvester Platt and Holihan; that Sylvester commenced the affray; that although the plaintiff was in the crowd surrounding them after the affray had commenced, he was a mere by-stander and did not participate in the contest; that Delos, the other defendant, was standing near by in the crowd to assist his brother Sylvester, both being armed with pistols; that when Delos ran from the crowd surrounding Sylvester and Holihan, he ran but a short distance, and drew his pistol while running; that while he was running with his pistol in his hand, he was seized by one Shortell, and a struggle ensued between them; that Delos immediately after fired his pistol, and fired four shots in succession; that the plaintiff did not join in any attack upon him, and did not pursue him at all;

Morris *v.* Platt.

that he did not approach him until he had fired two shots, and that he then did so for the purpose of assisting Shortell, who had been hit by one of the shots; that while he was so approaching him, and when near him, Delos fired two shots, one of which wounded him in the jaw and the other in his breast; that Delos was standing up when he fired the shots; and that the defendants armed themselves previous to the affray for the purpose of commencing a quarrel and using their weapons.

The defendants asked the court to charge the jury, that if they should find that, at the time of shooting the pistol, Delos Platt was being attacked in the manner claimed, and that from the number of his assailants and the weapons used by them, he was in danger of losing his life or of suffering extreme bodily harm, he would be justified in using a pistol or other deadly weapon in self-defense, provided he had done all in his power to avoid the danger by retreating as far as he could and had no other means of defense; that a man may lawfully take the life of another who is unlawfully assailing him to his imminent peril of life, or of extreme bodily harm; that a man who, in the lawful pursuit of his business, is attacked under circumstances which denote an intention to take away his life, or do him some extreme bodily harm, may lawfully kill the assailant, provided he use all the means in his power to save his own life, or prevent the intended harm, such as retreating as far as he can, or disabling his adversary without killing him, if it be in his power; that when the attack upon him is so sudden and violent that a retreat would only increase the danger he may instantly kill his adversary without retreating at all; and that where, from the nature of the attack, there is a reasonable ground to believe there is a design to destroy life, or commit a felony upon the person, the killing of the assailant will be excusable homicide, though it should afterwards appear that no felony was intended. The court did not so charge the jury, but said to them that " the great principle of self-defense is this, that whenever a person assails another, the party assailed may do what is reasonably necessary to defend

himself from the attack ; that what is reasonably necessary depends upon all the circumstances of the particular case— the character of the attack—the number of the assailants— the weapons used—the danger of the party assailed, together with all the circumstances." And the court omitted to charge them with regard to the right to take the life of an assailant, where, from the nature of the attack, there is reasonable ground to believe that he intends to take life, or commit a felony upon the person, because the court did not consider that the facts of the case required such instructions.

The plaintiff claimed and asked the court to charge the jury, that if in this case the defendant Delos was lawfully defend- ing himself against the attack of other persons when he fired the shots that injured the plaintiff, and it was necessary for him to use the pistol in so doing, yet if the plaintiff was not a party to the assault, but was a mere bystander, he would be liable to the plaintiff for all actual damage caused by the pistol shots, though he had no intention of shooting the plain- tiff, and did so accidentally while lawfully exercising his right of self-defense against his assailants. The defendants claimed, and asked the court to charge the jury, that to render them liable to the plaintiff in this action, there must have been an unlawful intention, or some neglect or fault on their part, and that if the jury should find that there was no intention to shoot the plaintiff, or to injure him, and that at the time the defendant Delos fired the shots which injured the plaintiff he was lawfully defending himself against those attacking him, and was wholly free from fault, and justified in firing the pistol in self-defense at those assailing him, and in so doing wounded the plaintiff accidentally, he being a bystander and having nothing to do with the assault, they would not be liable to the plaintiff for the injury. The court did not charge the jury as requested by the defendants, but in conformity with the claim of the plaintiff.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial.

*Kellogg*, in support of the motion.

1. The court erred in refusing to charge the jury as requested by the defendants, that if they should find the defendant Delos Platt at the time of firing the pistol was attacked in the manner claimed by them, and was in danger of losing his life or of receiving extreme bodily harm, he would be justified in self-defense in using a pistol or other weapon, having done all in his power to avoid the danger. The defendants having introduced evidence before the jury to prove these facts, were entitled to such instructions when requested, and the court ought so to have charged. The charge as given did not answer the request of the defendants. It was not enough to say that a party attacked may do what is reasonably necessary and that what is reasonable depends upon all the circumstances of the case. It was the province of the jury to pass upon the facts, and the court has no right to assume that the facts of the case did not require such instructions, when the motion finds that evidence of those facts had been presented to the jury. The court can properly refuse to state the law upon abstract questions only, where there is no evidence to which the instructions would apply. *Cowles* v. *Bacon*, 21 Conn., 451, 466 ; 3 Greenl. Ev., § 61 ; 1 Swift Dig., 479 ; 2 id., 284.

2. The court also erred in charging that if the defendant was lawfully defending himself against an attack when he fired the pistol, and if he was in imminent peril and it was necessary to use the pistol to defend his own person against his assailants, and in so doing he accidentally and without intention wounded the plaintiff, he would still be liable. On this principle no man could defend himself against a sudden and deadly assault, when there were bystanders or persons in the vicinity of the affray. The man in the crowd upon whom the lighted squib fell, would have no right to cast it from him, as it might *accidentally* hit another innocent bystander. If one is suddenly assaulted with a deadly weapon, and to save his own life shoots his assailant through the body, and wounds an innocent bystander beyond, is he liable in damages to the injured party ? The court should have charged as the defendants claimed, that to render them liable in this action there must have been

an *unlawful intention*, or some *negligence or fault* on their part. In all the cases in the books where one has been held liable for an accidental or unintentional injury, there was some negligence or fault on his part. 1 Selw. N. P., 28 ; 2 Greenl. Ev., §§ 85, 94 ; 1 Hilliard on Torts, chap. 5, § 9 ; *Brown* v. *Kendall*, 6 Cush., 292, 295 ; *Vincent* v. *Stinehour*, 7 Verm., 62.

*H. B. Munson* and *Doolittle*, contra.

1. By the pleadings the defendants put their case wholly upon the ground of lawful self defense, and their evidence was directed solely to this point. There is no intimation that the injury was accidental. This being so, they had no right to ask the court to instruct the jury upon the law as to accidental injuries and upon a state of facts not presented either by the pleadings or evidence. *Churchill* v. *Rosebeck*, 15 Conn., 359, 365 ; 1 Swift Dig., 772.

2. It would be no justification or excuse for the injury to the plaintiff that the defendant who fired the pistol did so without an unlawful intent, or that in firing the pistol he accidentally hit the plaintiff. " When a civil remedy is sought for a forcible injury the intention of the defendant is not regarded except for the purpose of enhancing or mitigating damages, and it is deemed just and reasonable, independent of any question of intent, that he by whose act a civil injury has been occasioned, should ultimately sustain the loss which has accrued rather than another." Gould, J., in *Myers* v. *The State*, 1 Conn., 505. " If a man assault me so that I can not avoid him and I lift up my staff to defend myself, and in lifting it up undesignedly hit another who is behind me, an action lies by that person against me, and yet I did a lawful act in endeavoring to defend myself." Case put by Brian, J., and assented to by Cheke, C. J. and Littleton, J., approved also by Blackstone, J., in *Scott* v. *Shepherd*, 2 Bla. R., 896. " The law does not so much regard the *intent* of the act, as the loss and damage of the party suffering." *Bessey* v. *Oliot*, Raym., 468 ; *Weaver* v. *Ward*, Hobart, 134 ; *James* v. *Campbell*, 5 Car. & P., 372 ; 2 Greenl. Ev., § 94. Lunatics

are liable for a civil injury, and yet they are not capable of having what the law would regard as an intention. The exercise of the right of self-defense must be limited to the party who assails; to allow a defendant to so exercise this right as to injure an innocent party, would be to hold his person more sacred and valuable than those of other men.

BUTLER, J. Upon a careful examination of the important questions presented upon this record, I do not see how the omission of the court to charge as requested on the first point, or the charge actually given on the second, can be vindicated, and the verdict sustained.

1. It appears from the evidence offered on the trial that the defendant wounded the plaintiff in two places by two shots fired from a pistol; and from the nature of the weapon, and the other conceded circumstances, the jury were authorized to find, and doubtless did find, that the wounds were inflicted with a design to take the life of the plaintiff. It was incumbent on the defendant to justify or excuse their infliction. He in the first place attempted to justify them, and the obvious attempt to take life which aggravated them, by offering evidence to prove that he was assailed by the plaintiff and others in a manner which indicated a design to take his life, and " that he was in great bodily peril and in danger of losing his life by means of the attack," and that he fired the pistol " to protect his life and his body from extreme bodily injury." If these facts were proved and found true, they fully justified the attempt of the defendant to take the life of the plaintiff as matter of law, and entitled the defendant to a verdict in his favor. And so the court were bound to tell the jury, if properly requested to do so by the defendant.

The motion further shows that the defendant did in substance request the court to charge, that if they found the fact proved as claimed, he would be justified in self-defense in using the pistol as he did—that the rule of law is " that a man may lawfully take the life of another who is unlawfully assailing him, if in imminent peril of losing his life or suffering extreme bodily harm, &c." What a man may lawfully do he

may lawfully attempt to do, and that request embodied in substance, and with sufficient distinctness, a well-settled specific rule of law, applicable alike in criminal prosecutions and civil suits and to the facts of the case as claimed.

The court did not conform to the request. The charge as given informed the jury what " the great principle" of the law of self-defense is, and correctly ; but that was not all to which the defendant was entitled. It is not for juries to apply "great principles" to the particular state of facts claimed and found, and thus make the law of the case. When the facts are admitted, or proved and found, it is for the court to say what the law as applicable to them is, and whether or not they furnish a defense to the action, or a justification for the injury, if that be the issue. And so where evidence is offered by either party to prove a certain state of facts, and the claim is made that they are proved, and the court is requested to charge the jury what the law is as applicable to them, and what verdict to render if they find them proved, the court must comply. This is not only the common law rule, but it is carefully and explicitly declared in this state by statute, that " it shall be the duty of the court to decide all questions of law arising in the trial of a cause, and in committing the cause to the jury to direct them to find accordingly." Rev. Stat., tit 1, § 144. Here the rule of law applicable to the facts claimed is as well-settled and specific as any rule of law in the books, and it was the duty of the court to give it to the jury as requested, and direct them if they found the facts as claimed to find a verdict accordingly. And if it were otherwise, and a specific rule settled by authoritative adjudications, in which the great principle had been applied to a similar state of facts, did not exist, it would still have been the duty of the court to apply the principle to the facts, and to tell the jury whether or not they furnished a justification in law to the defendant, for that, in the language of the statute, was " a question of law arising in the case."

The first request of the defendant which we are considering involved the finding of two principal facts, viz., first, whether the plaintiff was one of the assailants, and second, whether the

assault was made with a design to take the life of the defendant or inflict upon him extreme bodily harm.  But the jury might find upon the evidence that the plaintiff was one of the assailants, and fail to find the design to take life imputed to him.   To meet such a contingency the defendant added to his request, that the court should charge the jury, " that when from the nature of the attack there is a reasonable ground to believe that there is a design to destroy his life or commit any felony upon his person, the killing of his assailant will be excusable homicide, though it should afterwards appear that no felony was intended ; " but the court did not so charge, because, as the motion states, the court did not consider that the facts of the case required such instructions.

The facts of a case are to be found by the jury unless admitted, and the court can only regard them as claimed, for the purpose of applying the law to them contingently if found. When therefore the motion states that the court did not think the facts of the case required the instruction claimed, as the material facts were in dispute it must be intended that the court was of opinion that there was not any such law as claimed, applicable to the facts as claimed.  But in that the court were mistaken.  A man who is assailed, and under such circumstances as to authorize a reasonable belief that the assault is with design to take his life, or do him extreme bodily injury which may result in death, will be justified in the eye of the criminal law if he kill his assailant, and in an action of trespass, if he unsuccessfully attempt to kill him, and he surviving brings his action, for the killing would have been lawful and of course the attempt lawful ; and no man is liable in a civil suit or criminal prosecution for an injury lawfully committed in self-defense upon an actual assailant.   Doubtless the question whether the belief was reasonable or not, must, in either proceeding, be ultimately passed upon by a jury ; and the assailed judges at the time, upon the force of the circumstances, when he forms and acts upon his belief, at the peril that a jury may think otherwise and hold him guilty.   But in the language of Judge Bronson, in the thoroughly considered case of *Shorter* v. *The People,* (2nd

Comstock, 193,) " he will not act at the peril of making that guilt, if appearances prove false, which would be innocence if they proved true." And such is the law as cited by Judge Swift, (2 Swift Dig., 285,) from Selfridge's case, and as held on a careful review of all the cases in *Shorter* v. *The People*, and in numerous other cases which may be found cited there, and in Bishop on Criminal Law, vol. 2nd, page 561, and it is the law of the land. That part of the request of the defendant used the term " excusable," instead of "justifiable," in respect to the homicide, and the latter term would have been more accurate. But the import of the request is not materially varied by that, and we can not intend that it influenced the decision of the court.

2. The plaintiff, in answer to the defense made, denied that he was an assailant, and claimed that he was a bystander merely, and requested the court to charge the jury, in substance, that if they so found, he was entitled to recover, although they should also find the defendant to have been lawfully defending himself against his assailants, and the injury to the plaintiff accidental. That request of the plaintiff embodies the unqualified proposition that a man lawfully exercising the right of self-defense, is liable to third persons for *any* and *all* unintentional, accidental injurious consequences which may happen to them, and the court so charged the jury. Although there are one or two old cases and some dicta which seem to sustain it, that proposition is not law.

It is well settled in this court that a man is not liable, in an action of trespass on the case, for any unintentional consequential injury resulting from a lawful act, where neither negligence nor folly can be imputed to him, and that the burden of proving the negligence or folly, where the act is lawful, is upon the plaintiff. *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn., 124. Is the rule different in trespass, where the injury is the immediate and direct, though undesigned and accidental, result of a lawful act?

In respect to this question there is some confusion in the books, arising from two causes. First, the decided cases directly involving the point are few, but the question has been

very frequently adverted to by way of illustration or argument, in cases where the point was whether case or trespass was the appropriate form of action. Such, with a single exception, were all the cases which the plaintiff has cited on his brief from our own or other reports in which the dicta originated. In all that large class of cases the dicta are thus thrown out *obiter*, and assume the fact, without determining it, that the party is liable in one or the other form of action. (See on this subject the remarks of Shaw, C. J., in *Brown* v. *Kendall*, 6 Cushing, 295.) And in the second place, accidents (cognizable in actions at law, and distinguished from those peculiarly regarded in equitable proceedings) resulting from lawful acts, differ in character, and the distinctions and the right use of terms to characterize them have not always been sufficiently appreciated or regarded. A careful attention to those distinctions and the authorities will, I think, enable us to determine the question in hand with entire satisfaction.

An accident is an event or occurrence which happens unexpectedly, from the uncontrollable operations of nature alone, and without human agency, as when a house is stricken and burned by lightning or blown down by tempest, or an event resulting undesignedly and unexpectedly from human agency alone, or from the joint operation of both; and a classification which will embrace all the cases of any authority may easily be made.

In the first class are all those which are *inevitable*, or absolutely unavoidable, because effected or influenced by the uncontrollable operations of nature; in the second class those which result from human agency alone, but were *unavoidable under the circumstances;* and in the third class, those which were *avoidable*, because the act was not called for by any duty or necessity, and the injury resulted from the want of that extraordinary care which the law reasonably requires of one doing such a lawful act, or because the accident was the result of actual negligence or folly, and might with reasonable care adapted to the exigency have been avoided. Thus, to illustrate, if *A* burn his own house and thereby the house of *B*, he is liable to *B* for the injury; but if the house of *A* is burned

by lightning, and thereby the house of *B* is burned, *A* is not liable ; the accident belongs to the first class and was strictly inevitable or absolutely unavoidable. And if *A* should kindle a fire in a long unused flue in his own house which has become cracked without his knowledge, and the fire should communicate through the crack and burn his house, and thereby the house of *B*, the accident would be unavoidable under the circumstances, and belong to the second class. But if *A* when he kindled the fire had reason to suspect that the flue was cracked, and did not examine it, and so was guilty of negligence, or knew that it was cracked and might endanger his house and that of *B*, and so was guilty of folly, he would be liable although the act of kindling the fire was a lawful one, and he did not expect or intend that the fire should communicate.

And so, to apply these principles to this case;—if the defendant had been in the act of firing the pistol at an assailant in lawful self-defense, and a flash of lightning had blinded him at the instant and diverted his aim, or an earthquake had shaken him and produced the same result, or if his aim was perfect but a sudden violent puff of wind had diverted it or the ball after it passed from the pistol, and in either case the ball by reason of the diversion had hit the plaintiff, the accident would have been so effected in part by the uncontrollable and unexpected operations of nature as to be inevitable or absolutely unavoidable; and there is no principle or authority which would authorize a recovery by the plaintiff.

And, in the second place, if while in the act of firing the pistol lawfully at an assailant, the defendant was stricken, or the pistol seized or stricken by another assailant, so that its aim was unexpectedly and uncontrollably diverted towards the plaintiff; or if while in the act of firing with a correct aim, the assailant suddenly and unexpectedly stepped aside, and the ball passing over the spot hit the plaintiff, who till then was invisible and his presence unknown to the defendant; or if the pistol was fired in other respects with all the care which the exigencies of the case required or the circumstances permitted, the accident was what has been correctly termed

" unavoidable under the circumstances," and whether the defendant should in such case be holden liable or not is the question we have in hand. For, in the third place, if the act of firing the pistol was not lawful or was an act which the defendant was not required by any necessity or duty to perform, and was attended with possible danger to third persons which required of him more than ordinary circumspection and care, as if he had been firing at a mark merely ; or if the act though strictly lawful and necessary was done with wantonness, negligence or folly, then, although the wounding was unintentional and accidental, it is conceded, and undoubtedly true, that the defendant would be liable.

In this case the rule of law claimed by the plaintiff, and given by the court to the jury, authorized them to find a verdict for the plaintiff if they found the accident to belong to the second class, and to have been " unavoidable under the circumstances." We have seen that if the injury had been consequential and the form of action case, the defendant would not have been liable, and the question returns, whether he can and should be holden liable because the injury was direct and immediate and the form of action is trespass. I think not, whether the decision of the question be made upon principle or governed by authority.

If the question is to be settled upon principle it seems very clear that the form of the action should not be regarded, for the liability of the defendant must be determined by the nature of the accident, whether avoidable or unavoidable under the circumstances, or inevitable, and not by the fact that the injury was direct or consequential. The *foundation* of that liability in every case of accident, where it is the result of human agency uninfluenced by the operations of nature, and the act is lawful, is really *negligence*. This is true of collisions between vessels on the water, or horses or vehicles and persons upon the land, which constitute the largest class of cases, for, as the accidents result from steering or driving and are therefore direct injuries, trespass is the only remedy. So when a man in firing at a mark unintentionally wounds another, the injury is direct and the form of action is trespass,

but the ground of liability is negligence in doing an unnecessary and avoidable though lawful act, without that extraordinary degree of care which the law demands in such circumstances, and which would have prevented the accident. As therefore the foundation of the liability is the same in both cases, irrespective and independent of the question whether the injury was direct or consequential, there is no reason for any distinction in respect to the justification in the two actions.

And to that effect is the current of authority. In England the dicta cited from Raymond were disregarded by a majority of the court in *Scott* v. *Shepherd,* although urged by Blackstone, J., who dissented, and the *decision* is in point for the defendant. No case in point for the plaintiff is cited upon his brief. The case of *James* v. *Campbell,* 5 Car. & P., 372, is not so, for in that case Campbell the defendant and another were fighting unlawfully, and in breach of the peace, and while thus fighting and attempting to hit his antagonist, Campbell hit the plaintiff who was a bystander. But there the act was every way avoidable.

Mr. Hilliard, in his work on Torts, (vol. 1, chap. 5, sec. 9,) so states the law, and cites the English case of *Wakeman* v. *Robinson,* 1 Bingham, 213, and the case fully sustains him. The action was *trespass* for driving against the horse of the plaintiff, and the rule of law recognized by the court as applicable to the action is stated in the head-note thus :—" If one does an injury by unavoidable accident an action does not lie, *aliter* if any blame attaches to him though he be innocent of any intention to injure." If there be any later case overruling that, it has not been pointed out to us, or fallen under our observation. As late as 1860, and in the tenth edition of Roscoe's Digest of the Law of Evidence at *Nisi Prius,* that case is cited as law.

In this country, though the cases are few, they are all so far as we are informed with the defendant. In the case of *Vincent* v. *Stinehour,* 7 Verm. R., 62, which was an action of trespass against the defendant for driving a horse and sulky against the plaintiff, the defendant claimed that the accident

was unavoidable under the circumstances, for that his horse became ungovernable and the injury could not be prevented by prudence and care, and the supreme court in an elaborate opinion held that a defense. In *Brown* v. *Kendall*, 6 Cushing, 292, which was an action of assault and battery, the defendant accidentally hit the plaintiff, a bystander, while raising a stick to strike and part two dogs which were fighting. This was the precise case put for the purpose of illustration by some of the English judges, as cited on the brief of the plaintiff's counsel. Yet the court in Massachusetts, Chief Justice Shaw giving the opinion, held that the defendant was not liable " unless the act was done in the want of the exercise of due care, adapted to the exigency of the case, and therefore such want of due care became part of the plaintiff's case, and the burden of proof was on the plaintiff to establish it." The same principles are recognized by the supreme court of the state of New York, in the case of *Bullock* v. *Babcock*, 3 Wend., 391, although they were not applied because that was a case of avoidable accident, the injury having been inflicted by an arrow while shooting at a mark without reasonable care. And it is sufficient to add that the case of *Vincent* v. *Stinehour*, was cited by Judge Williams, in giving the opinion in *Burroughs* v. *Housatonic R. R. Co.*, (15 Conn., 131,) with evident approbation, although, as the case did not call for it, the principle involved was not in terms adopted. But the broad proposition subsequently stated without qualification in respect to the form of action, that " where there is neither negligence nor folly in doing a lawful act, the party can not be chargeable with the consequences," tends to show the inclination of his mind, and we can not doubt that if the case had required it, the rule as settled in *Vincent* v. *Stinehour* would have been adopted by the court.

Such are the general rules of law applicable to accidental injuries by which we must be governed in deciding the question as raised on the motion. But we are not insensible to the fact that the danger of accidental injury to third persons from the use of fire-arms, even in lawful self-defense, is comparatively very great, that the bearing of these arms is becoming

needlessly general and their use in populous places and thoroughfares quite too frequent, and that some further protection to the public from injury by them seems necessary. That protection might be afforded by us perhaps, if we should hold, 1st, the use of fire-arms, even in lawful self-defense, to be attended by so much contingent danger to innocent third persons that accidental injuries by them should be deemed exceptional and wholly inexcusable as matter of law, or inexcusable unless the defendant should show that they were inevitable or absolutely unavoidable; or 2d, that *all* such injuries should be deemed *prima facie* negligent, and that it should be left to the jury to say whether in the particular case the danger of injury to third persons was so slight and improbable that the case was exceptional, and the defendant wholly free from blame, either in having or using the instrument. It is obvious however that if we should thus introduce an exception into the law to meet new contingencies we should be going beyond the exigencies of this case (there being other errors,) and encroaching upon the peculiar duties of the legislative branch of the government; and to that branch, with this statement of the condition of the common law, and suggestion in respect to the importance of a remedy, we must leave the matter.

We advise that a new trial be granted.

In this opinion the other judges concurred.