Rockingham,
April 1, 1941. } No. 3228.

JOHN L. BOGRETT,

*By his Father and Next Friend,* VICTOR A. BOGRETT

*v.*

PAUL F. HROMADA.

352

*William H. Sleeper*, for the plaintiff, furnished no brief.

*George R. Scammon* (by brief and orally), for the defendant.

PAGE, J.   For convenience, John L. Bogrett will be called the plaintiff.   The declaration charged an assault by striking the plaintiff's head and seizing him and causing his hand to be projected through the glass of a window, with the result that the hand was permanently injured.   The defendant pleaded the general issue, without filing a brief statement of justification.

The facts, as the jury might have found them from the evidence, were these.   The plaintiff and two other boys had an exchange of words with the defendant concerning a ball game across the street from the defendant's store.   Subsequently the defendant closed his store for the night.   Two hours later he returned to get something and found the boys talking with two girls in front of the store.   Two of the boys other than the plaintiff had raised the store awning and tied the cord to the door-handle in such manner that the defendant could not gain entrance until he had cut the cord.

The defendant told the boys to go away. Two of them left with the girls, but the plaintiff remained. When, after being in the store for several minutes, the defendant started to leave, he found the plaintiff standing directly in front of the door and blocking the way. Again he asked him to leave, but the boy refused, suggesting that it would take a bigger man than the defendant to make him move. It could be found that this was reasonably understood by the defendant as a threat of assault if he attempted to leave the store, as he had a right to do.

The defendant then attempted to get out of the store by pushing by the plaintiff. There was a scuffle. The defendant broke away. Upon that the plaintiff swung with his fist, the defendant ducked, and the plaintiff's fist went through the window. Upon these findings neither allegation of the plaintiff could be sustained. Moreover, the plaintiff's damages were solely due to his own act in trying to strike the defendant after the latter had attempted to retreat, and the defendant would not be liable for such damages.

In the course of the charge to the jury, the trial justice said: "The defendant here admits that he pushed the boy out of the way because he was blocking his egress from the store, but seeks to justify this because of his claim that such act on his part was necessary . . . that it was necessary for him to push him aside in order to leave his store . . . It is claimed that the boy then pushed him and that they then got into a tussle and as a result the boy received an injury. I wish to instruct you . . . that it is unlawful for a person to interfere in any way whatever with or to injure or damage another in his person or his property while engaged in his lawful business, trade or occupation."

The plaintiff excepted to the instruction that the defendant could justify on this ground. The exception was not based upon the claim that justification was not in issue (*Noyes* v. *Edgerly*, 71 N. H. 500; *Fortier* v. *Stone*, 79 N. H. 235). The plaintiff had made no objection to the introduction of evidence on that issue. He took the position that no blocking of egress by him could justify the use of force by the defendant. That is an untenable position. Restatement, Torts, s. 68. Though the plaintiff might have insisted that a brief statement of the defence in pleading was necessary in order to raise the issue, he "by silence waived objection at the trial when an amendment of the pleadings could have been offered. . . . From the plaintiff's silence the defendants could fairly infer, and they could fairly act upon the inference, that the admissibility of their

defence under the general issue was not contested." *Lyons* v. *Child*, 61 N. H. 72, 74. The defendant here conceded nothing as to the justification (*Fortier* v. *Stone, supra*); during the whole trial his course asserted the contrary.

On the question of the burden of proof, the court told the jury that the plaintiff had the burden of satisfying them by a balance of probabilities that "his version of what occurred . . . is a little more probable than otherwise." The plaintiff excepted on the ground that "they could still bring in a verdict for the plaintiff even though they did not find that everything happened the way he says it did." The court then gave a supplementary instruction making it clear that "his version" included not merely the plaintiff's testimony, but also "the evidence that was offered by him and all his witnesses." If the instruction was still too narrow, the plaintiff failed to make further objection and to take further exception. Thus no question of law is raised. Nor did the plaintiff raise the question whether the burden of proof of justification was on the defendant.

The trial justice referred in his charge to "some evidence in this case that these boys had interferred or had taken upon themselves to tie up this man's awning." The plaintiff excepted on the ground that on the direct evidence only two of the three boys tied up the awning. The evidence was that Robinson and Mack, the plaintiff's companions, did the tying. When Robinson testified to this on cross-examination, he said that it was "just sort of childish revenge, something like that, hatefulness, anything you like to call it." He was then asked, "That's the respect you had at that time for other people's property, isn't it?" Plaintiff's counsel objected that this would not be chargeable to "the other boy" (Mack?). The court admitted the question as cross-examination, and the plaintiff excepted. Robinson answered, "Well, personally for his property meaning myself, yes sir." If the question was inadmissible because of its possible prejudice to the plaintiff, no harm was done. *Heilman* v. *Whalley*, 90 N. H. 215, 220.

The next question to Robinson was, "And nobody there said Now you shouldn't tie this up, you shouldn't do anything like that, there's nobody that said that, was there?" Subject to the plaintiff's exception, the question was answered in the negative. If the plaintiff was present when the others tied up the awning and made no objection, evidence of the fact was material as tending to show his later state of mind when he refused to make way for the defendant. Then followed the question, "And you all thought it was a pretty

good stunt, didn't you?" The plaintiff's counsel objected that it was immaterial what the witness thought, and excepted to the admission of the question. But the possible prejudice was avoided by the answer, "Well I thought it was a pretty good stunt. As Johnny [the plaintiff] had nothing to do with it I don't know whether he thought it was a good stunt or not."

The reference in the charge to the evidence of the tying up of the awning could not have been misunderstood by the jury to the prejudice of the plaintiff. In this respect the charge was: "There is some evidence in this case that these boys had interferred or had taken upon themselves to tie up this man's awning or the ropes of the awning to his door, so that it was necessary for him to obtain a knife to cut the cord so that he could get in and it is his claim that he was justified not only in pushing this boy after having warned him to leave his premises or to leave that vicinity, his claim being that his property was in danger by the acts of these boys and that he had warned them to leave and that he had given the same warning to the plaintiff's boy." The exception to this charge was based on the contention that the court should also have told the jury that only two of the boys had tied up the awning.

The tying up of the awning furnished merely the stage-setting for the incident, the appearance, as the defendant might have seen it, that these boys, or some of them had done something which made their presence undesirable and perhaps threatening. It was the reason for his demand that they leave; it was not the justification for the pushing. That came later. As the court proceeded to say, "His claim further is that the plaintiff's boy declined to leave and he was placed in a position so that it was necessary for him to push him aside in order to leave his store and for that reason he justifies this so-called pushing."

That the jury understood this matter is apparent. Some two hours after they had retired, they asked the court in writing "to be advised as to the defendant having the legal right to remove by force John Bogrett from obstruction [of] his passage to his automobile." The court read to the jury his former instructions, and added: "I have stated that the defendant did have the right to use a reasonable amount of force to remove the boy from or to prevent this boy from preventing him, the defendant, from leaving his store. He was permitted to use a reasonable amount of force to do that but that is all he could do. Not an unreasonable amount of course and I so stated that in my charge to you and, as I say, it is a question of

reason, what was the reasonable thing to do under the circumstances? If he acted reasonably then the defendant is not liable. If he acted unreasonably then the defendant is liable."

The plaintiff excepted to this additional instruction, on the ground that it presupposed that the boy had blocked the defendant's egress. The court thereupon told the jury that it was for them to find whether the boy did obstruct the defendant's passage; if he did, the defendant had the right to use reasonable force, and it was for the jury to say whether reasonable force was used in overcoming the obstruction, if it in fact existed. With this amendment, the plaintiff appeared to be content. He made no attempt to raise the question whether reasonable force, justifiable under the circumstances, was properly in issue.

The court instructed the jury concerning the injuries for which the plaintiff might recover in case an assault were found. The exception to this charge is not available, since the jury found there was no assault for which recovery could be had.

The plaintiff asked for certain instructions and excepted to the refusal of the court to give them. Since the requests are not found in the record, no question is before us.

The defendant's attorney asserted in his argument to the jury that a statute prohibits interference "with the personal property of another individual going to and from his business or at his business." The plaintiff excepted on the ground that the statute was immaterial for the purposes of this case. The record is silent as to the statute referred to. But assuming that the statute was immaterial, the argument could not have been prejudicial. The jury's request for further instructions went directly to the heart of the question of justification at common law, which was the extent of the legal right to use force in removing the plaintiff if he obstructed the defendant's egress. It is clear that the jury based the verdict upon the defendant's common-law rights, not upon the statute.

After verdict the plaintiff moved for a new trial because of newly discovered evidence. The court found upon sufficient grounds that the new evidence offered was cumulative and that there was no probability that a different result would have been reached if the evidence had been before the jury. His denial of the motion therefore raises no question of law. *Jackson* v. *Smart*, 89 N. H. 457.

*Judgment on the verdict.*

All concurred.