Irwin C. Johnson, Appellant, v. John Englehardt, Appellee.

Gen. No. 8,268.

558

Opinion filed February 3, 1930.   Rehearing denied April 4, 1930.

GREEN & PALMER, for appellant; HENRY I. GREEN, GEORGE E. MARTIN and ORIS BARTH, of counsel.

SCHAEFER & DOLAN and BOYER & LEONARD, for appellee.

PER CURIAM.

Appellant filed his suit in the Champaign county circuit court against appellee to recover damages for personal injuries. Upon the proofs presented the following state of facts developed:

Appellant was assisting in replacing and relaying street car tracks on Neil Street in the City of Champaign, where that street intersects and crosses Clark Street. Neil Street is one of the principal business streets of the City of Champaign, and runs north and south. Clark street is an intersecting street running east and west.

The injury to appellant occurred September 15, 1927. Across the intersection of the two above-mentioned streets, a barricade had been constructed on the west side of the street car tracks extending in a northerly and southerly direction. That portion of the street occupied by the rails of the street car track was paved in brick, and the brick extended for a distance of 16

inches on each side outside of the rails. From there on to the curb on each side the pavement was concrete. From the rail to the curb line on Neil Street where the injury occurred, the distance is 21 feet 6 inches. The barricade consisted of two boards supported by a carpenter's horse. This barricade stood at the edge of the concrete pavement 16 inches from the rail and the spread of the legs of the carpenter's horse, which formed a part of the barricade, was 32 inches, making the portion of the street from the outside of the rails to the westernmost edge of the barricade a distance of 48 inches. This barricade was painted white and in reality consisted of two barricades, each 16 feet in length, with a space of about 3 or 4 feet between, and the top of the barricade standing about 4 feet from the level of the pavement. There was a red flag at each end of the barricade and bright flambeau torch lamps painted red and yellow were also at each end, but were not lighted. The workmen had torn out the brick between the rails of the street car tracks for a portion of the distance between the intersection of Neil and Clark Streets, but not to the south curb line of Clark Street. The south end of the barricade was about 6 or 7 feet from the south curb line of Clark Street. Each morning a section of brick was taken up between the rails and piled on the side of the track, and then the sand and refuse remaining were shoveled into a wheelbarrow and hauled away, and appellant was engaged in hauling away this refuse in a wheelbarrow at the time he was struck.

At that time he was just a short distance south of the barricade, about 6 or 7 feet, with his wheelbarrow resting on the sixteen-inch space occupied by the brick between the outside of the west rail of the street car track and the concrete pavement to the west. The wheelbarrow had been loaded and he had just reached down and taken hold of the handles when he was struck

by an open door of the automobile being driven south down Neil Street by the appellee.

The place of the injury was in a closely built-up business section of the City of Champaign. Appellee had driven an automobile for 16 years in and about Champaign and had lived in Champaign about 26 years, and was familiar with the conditions on Neil Street. He testified that he looked down Neil Street that day and saw this barricade, but does not know whether he noticed the red flag or not, but says that he saw the men working in the street, and the track torn up, and this wheelbarrow and the man with the wheelbarrow. He says that he increased speed until he got to the barricade, and then kept up the same speed, kept going in a straight line down Neil Street without turning to the right or left, and that there was plenty of room for him between the barricade and any cars parked between Clark and White Streets. White Street was the next street south of Clark intersecting Neil. He says that he knew all the time that the men were working on Neil street, knew it that morning when he went downtown, and knew it all day.

An I. P. & L. bus had passed down Neil Street a few moments ahead of appellee's car. The bus was 7 feet 10 inches wide.

J. W. Raney testified that the defendant's car came from the north and got to the end of the barricade and in place of going straight, swung in to the east and hit appellant with the open door of his car, and that after he passed appellant he then swung back west. He further testified that appellant's car was going between 20 and 25 miles an hour.

Walter Ball, another workman, testified that the defendant's car was running 25 to 30 miles an hour. T. C. Redenbaugh, also working at the place of the injury, testified that in his opinion the defendant's automobile was traveling between 20 and 25 miles an hour.

Other witnesses testified that appellee, after reaching the end of the barricade, swerved his car to the east and struck the appellant, the left rear door of the car being open and swinging, and that then appellee turned the car again to the west.

Knowing of the work being done on the street, of the presence of this barricade and of the workmen in the street, the testimony for appellant was that appellee drove his automobile down the street in a closely built-up business section at a rate of 20 to 30 miles an hour, with the door open; that appellee suddenly swerved his car toward the track and in an easterly direction at the end of the barricade, struck the appellant and then proceeded on down the street 75 or 100 feet before he stopped his automobile and closed the car door.

Appellee admitted that his car door was open; that he got out and closed it after passing the barricade, and that after striking appellant he did not go back. He said he did not know that he had struck anybody; that he couldn't remember whether or not he had testified in a proceeding in which the accident was involved before Magistrate James in Champaign on September 28 previous. He further said that he did not remember whether he testified before Magistrate James that he heard something hit his car as he passed the man with the wheelbarrow at the time and place in question. However, J. W. Raney testified that he was present at said hearing before Magistrate James and that appellee was there, was sworn and testified, and that appellee stated in substance that as he went by this barricade and this man with a wheelbarrow he did hear something hit the car.

Appellant's declaration contains seven counts. The first count charges a simple assault with force and arms, etc.; that the appellant assaulted appellee with great force and in wilful violation of section 22 of the "Motor Vehicle Law," Cahill's St. ch. 95a, ¶ 23, drove

a certain automobile, etc., upon a certain highway in the City of Champaign, where said public highway passes through a closely built-up business portion of the incorporated City of Champaign, at a speed greater than was reasonable and proper, having regard to the traffic and use of the way and at a rate of speed exceeding 10 miles per hour, to wit: at a rate of speed of 30 miles an hour, and that said driving, in the manner, etc., constituted an unlawful act on the part of appellee, and in the doing of said unlawful act, while driving said automobile, appellee, with great force and violence, did drive the said automobile against and upon appellant and then and there, with said automobile, violently struck appellant and knocked him down, etc., causing the injury, etc.

The second count charges the assault and striking of appellant with the automobile, etc., in similar language as set out in the first count, but omits to charge that the assault was made by appellee while engaged in the commission of an unlawful act. Both the first and second counts aver that the assault was made "against the peace of the People and to the damage," etc.

The third to the sixth counts set out charges of negligence, injury and damage and the seventh count charges that appellee was driving in a negligent, careless and reckless manner, and at a dangerous and negligent rate of speed and that appellee did then and there negligently, carelessly, wantonly and wilfully drive the said motor vehicle upon and against appellant, who was during all of said time in the exercise of due care and caution for his own safety, etc., with the other charges of injury, damage, etc. Appellee filed a plea of the general issue and there was a trial by jury. At the close of the appellant's proofs, on the motion of appellee, the court withdrew from the jury all consideration of the case under the first, second and seventh counts of the declaration. There was a verdict

for appellee, motion for new trial made and overruled and judgment for appellee in bar of the action. The record is brought to this court by appeal, for review.

It is contended by appellant that it was error for the court to withdraw from the consideration of the jury the first, second and seventh counts in the declaration in view of the testimony submitted to the jury. The first and second counts charged an assault and battery while engaged in the commission of an unlawful act, and cited: 2 Am. and.Eng. Ency. of Law 953, 954; 5 Corpus Juris, 622; *Land v. Bachman,* 223 Ill. App. 473; *Little v. Munson,* 54 Ill. App. 437, 439; *Nicholls v. Colwell,* 113 Ill. App. 219, 222; *Shanley v. Wells,* 71 Ill. 78, 81; *Paxton v. Boyer,* 67 Ill. 132 and *Schmitt v. Kurrus,* 234 Ill. 578, 582.

It is contended by appellant that appellee at the time and place of the injury, was engaged in the commission of an unlawful act in the violation of section 22 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 23, in reference to speed, and that appellee would be liable, even if there was an entire absence of intent to do any injury. Upon a full examination of the cases, we cannot agree with appellant's contention in this case for two reasons: first, the rate of speed of appellee's automobile was not, in any sense, the cause of the injury. The car running at 10 miles an hour under the same circumstances would have effected the same injury. The basis of the count is that appellee, after passing the barricade, swerved his car to the left and struck appellant. Appellee cannot be charged with commission of any unlawful act under the first and second counts to relieve appellant from the proof of malice except upon proof of an unlawful act which is the direct cause of the injury; and second, in assault and battery, malice is the gist of the action and must be proven by plaintiff, or the plaintiff must prove that the defendant committed the assault while engaged in the commission of an unlawful act, which was the direct and proximate

cause of the injury. (5 Corpus Juris, 622; *Paxton v. Boyer,* 67 Ill. 132, 135; *Shanley v. Wells,* 71 Ill. 78; *Gilmore v. Fuller,* 198 Ill. 130, 143; *Schmitt v. Kurrus,* 234 Ill. 578; *Razor v. Kinsey,* 55 Ill. App. 605; *Nicholls v. Colwell,* 113 Ill. App. 219; *Amborn v. Smyser,* 182 Ill. App. 208; *Land v. Bachman,* 223 Ill. App. 473.)

There is some conflict in the authorities and the rule is to be determined by a consideration of all the cases. In 5 Corpus Juris, *supra,* the author lays down the rule:

"While there is some apparent conflict in the cases as to whether the existence of malice or a specific wrongful intent to injure is essential to the maintenance of a civil action for assault and battery, the true rule is that intent is the gist of the action only where the battery was committed in the performance of an act not otherwise unlawful; or, as it is sometimes stated, there is no assault and battery unless the touching was with the intent to injury, or unless the defendant was otherwise engaged in a trespass or other unlawful transaction at the time of the act complained of. . . . If the defendant did an illegal or mischievous act, which was likely to prove injurious to another, he is answerable for the consequences which directly and naturally resulted from his conduct, even though he did not intend to do the particular injury which followed. . . . and it has been held that a physician who skillfully performed an operation to the benefit of his patient was liable to her in assault and battery where it was performed without her consent and not in pressing emergency."

The author states the rule and cites *Hitzelberger v. Kanter,* 181 Ill. App. 459; *Nicholls v. Colwell, supra; Paxton v. Boyer, supra; Schmitt v. Kurrus, supra; Shanley v. Wells, supra.*

In *Gilmore v. Fuller, supra,* it was held that "the intention to do harm is of the essence of an assault,"

and in *Razor v. Kinsey, supra,* it was held that " 'It was not necessary in order to constitute an assault and battery that the defendant below should have touched the child with his hands or other part of his person. It is enough that he wilfully set a force in motion which caused the injury as an immediate result'; citing many authorities. Wilfulness, or intention on the part of the defendant to do the injury to the person of the party injured, is held to be essential to the establishment of liability of the defendant in an action of trespass for an assault and battery, and malice or wantonness besides, to an allowance for vindictive damages. There may be trespass to the person and liability for the actual damage, without intention to commit it, but not an assault and battery."

In *Amborn v. Smyser, supra,* it is held that "The intention to do harm is the essence of an assault."

From these cases we gather that there is a distinction made by the courts between a civil suit for damages, based upon assault and battery, and other civil suits for damages, based upon trespass on the case. This is accentuated by what the court said in *Enochs v. Trevett,* 229 Ill. App. 235, 242, and *O'Donnell v. Snyder,* 231 Ill. App. 581, 584, referring to *Land v. Bachman,* 223 Ill. App. 473. *Land v. Bachman, supra,* is cited by appellant as an authority in this case that the court was in error in withdrawing said counts from the consideration of the jury. But the cases differ in this respect, that in *Land v. Bachman, supra,* the pleader did charge that the assault and battery was the direct result of the unlawful act in which the defendant was said to be engaged, and the court held:

"A criminal offense consists in a violation of public law, in the commission of which there shall be a union or joint operation of act and intention or criminal negligence. Where a battery is the result of criminal negligence, the wrongdoer is guilty of assault and battery

the same as if the battery was intentionally committed. Section 280, ch. 38, Rev. St. Ill. (Cahill's Ill. St. ch. 38, ¶ 617.)''

We quite agree with appellee's contention that section 36 of the Practice Act, Cahill's St. ch. 110, ¶ 36, abolishing distinctions between actions of ''trespass'' and ''trespass on the case,'' has not modified the fundamental law applicable to the two distinct forms of action, and that the distinction between negligence and wilfulness is fundamental. The section may modify somewhat the form of pleading. In the proofs it is uncontradicted that in driving the car appellee did not know the door of the car was swinging open until after it had struck appellant. Appellee did not know appellant. Had the door of the car been closed there could have been no injury. No other fact or circumstance is shown tending to show malice or a wilful and wanton injury. Under this testimony, the first, second and seventh counts of the declaration could not be supported and the court did not err in withdrawing these counts from the consideration of the jury.

Appellant assigns error that the verdict and judgment are against the manifest weight of the testimony. It is undisputed that appellee drove his car down Neil Street at whatever rate of speed the car was traveling, with the left rear door open, swinging backwards and forwards. The great weight of the testimony was that in the closely built-up business district of the City of· Champaign appellee was driving his car at a speed of from 20 to 25 miles an hour, and there was much testimony tending to show that appellee, after passing the barricade, swerved his car in towards appellant. However, appellee does not dispute the salient facts which constitute negligence. It was negligence on the part of appellee, in view of all the surrounding circumstances, to drive the car at all upon a busy street of the city with the rear door swinging open, and assuming that appel-

lee was driving at the rate of speed which he testified he was driving, with the door swinging, appellee was driving ''at a high, dangerous and negligent rate of speed and in a careless and negligent manner for the safety of others, then and there lawfully being upon said street,'' as charged in the declaration, and if the proofs show that appellant was in the exercise of ordinary care for his own safety, at the time of and just before the injury, the verdict and judgment were against the manifest weight of the testimony. As to just what appellant was doing at the time of the injury the witness Raney testified: ''The pavement on Neil Street is concrete with brick between the rails of the street car track and extending out from the rails about 16 to 18 inches. The barricade sat on the concrete, with the outer legs between 30 and 32 inches west of the east edge of the concrete pavement on the west side of the track. There was a red flag and then a flambeau torch light north of the barricade placed as a sign of warning. The flambeau was painted red at the bottom and yellow at the top, but was not lighted. On the south end of the barricade there was a little flag and two lamps. We had torn out all between the rails and the concrete and in between the rails of the track for about 36 or 37 feet, a little longer than the barricade there for the full width of Clark Street. The barricade didn't quite reach across Clark Street—lacked a little bit of going to the south edge of it. The south end of the barricade was about six or seven feet from the south curb line of Clark Street near the telephone building. Mr. Johnson had just gotten in between the handles of a wheelbarrow wheeling out rubbish and cleaning up. The wheelbarrow was setting in the space there where the 16 or 18 inches of brick lay, and he went to get in between the handles, just went to stoop down to take hold of the handles and Mr. Englehardt came along and slapped him with the open door of his car. Mr. John-

son was in the neighborhood of six or seven feet south of the south end of the barricade, and was standing on the 16-inch space occupied by the brick. There was a red flag about six or seven feet behind him at the end of the barricade. The car came from the north, come right straight on down south and got to the end of the barricade and in place of going straight there swung in and hit Johnson with the door and it open. He swung east, then when he got past Johnson, he swung back west."

This testimony was corroborated by other witnesses and was not contradicted. Appellant was working within a zone about which due care and caution had been used to protect the laborers therein. Appellant was just stooping down to pick up the handles of his wheelbarrow; he was engaged in his work and was within a "protected zone," and he was not paid to be looking for cars, but was fully protected from all drivers using the street in an orderly and lawful manner. The proofs show that appellant was in the exercise of due care and caution for his own safety. It follows that the verdict and judgment were against the manifest weight of the testimony, and the judgment of the circuit court of Champaign county is reversed and the cause remanded.

*Reversed and remanded.*